Carroll,
May 5, 1942. } No. 3324.

CHESTER M. ABBOTT, *Adm'r of* HOWARD O. GRANT *v.*

ROBERT W. HAYES, & *a.*

*Cooper, Hall & Grimes* (*Mr. Cooper* orally), for the plaintiff.

*Sewall, Varney & Hartnett* (*Mr. Hartnett* orally), for the defendants.

BRANCH, J. Before trial, each of the defendants filed a motion for specifications of the negligence relied upon by the plaintiff. In accordance with these motions, the plaintiff filed, in each case, allegations of excessive speed, violation of the law of the road, and failure to keep to the right of the center. In the case of Hayes, the following sentence was added: "and such other act or acts of negligence on his part as the evidence may develop in the course of the trial." In the case of the defendant Vogel, the following sentence was added: "and such other act or acts, or failure to act, on his part, or on the part of his agents, as the evidence may develop in the course of the trial." Defendants' motion to strike out the above sentences was denied, subject to exception, and the cases went to trial upon the declarations as above amended. The order of the trial court was, in effect, a finding that the specifications were adequate and is not open to review by this court. Although this order did not contain the words "without prejudice" as in *Brown* v. *Barnard*, 91 N. H. 58, it was by its very nature interlocutory and tentative in effect. If at the trial it appeared that the defendant was prejudiced or surprised by the issues presented, a motion to modify the order should have been granted. No such motion appears to have been made. No claim of surprise or prejudice was made at the trial. Hence it cannot be found that any injustice was done by the order and the exception is accordingly overruled.

The insistence of the defendants that their motions for nonsuits and directed verdicts should have been granted, necessarily rests upon the contention that the testimony of the two persons, who claimed to have been eye witnesses to the accident, was uncontradicted and must be accepted as true. These were the defendant Hayes, the driver of the truck, and the witness Otis, who testified that he was following closely behind the truck and saw the collision. They both testified that the truck was at all times on its right side of the road and that the Grant car cut out suddenly into the path of the truck when so close to it that a collision was unavoidable. There are two obvious answers to this contention which preclude its adoption: 1. Upon the evidence it was a doubtful question of fact whether Otis was an eye witness to the accident, and 2. It is well-nigh impossible to reconcile their version of what occurred with the admitted damage to the two vehicles, which indicated that the right front end of the automobile was in collision with the right front end of the truck, at an angle of 45° according to the testimony of the plaintiff's expert. These two considerations alone, without further

reference to the testimony, preclude the adoption of the defendants' theory as to the cause of the accident.

It was the contention of the plaintiff that when the accident occurred, the truck had entered the easterly lane of the highway along which Grant was approaching. This contention received some confirmation from the testimony of the witness Sparks, who also claimed to have been following the truck, that after the truck passed over the crest of a slight grade just before the accident "it began to cut toward the center of the road . . . from all appearances the truck was pulling toward the center of the road . . . and as the crash came the truck seemed to slide sideways like and cut more to the left." It was further supported by the evidence as to the damage to the two vehicles above referred to, and the plaintiff argues that it was further confirmed by the evidence as to the marks upon the highway after the accident. The evidence of these marks was extremely confused and the inferences to be drawn therefrom were highly problematical. Nevertheless the existence of the marks and their significance was plainly for the jury.

The verdict of the jury absolving the defendant Hayes from blame in causing the collision, presents a further question as to the liability of the defendant Vogel which was raised by his motion for judgment notwithstanding the verdict. If the presence of the truck in the easterly lane was not due to the fault of Hayes, upon what theory can the liability of the defendant Vogel be sustained? The answer of the plaintiff is that the presence of the truck on the wrong side of the road was accounted for by the facts that it was overloaded, unbalanced and improperly equipped, and driven at a speed which, under these circumstances, was excessive, although Hayes, by reason of improper instructions, did not know this to be so. There was evidence that the truck, originally designed to carry $1\frac{1}{2}$ tons, had been equipped with a larger and higher body and was actually carrying a load in excess of $6\frac{1}{2}$ tons at the time of the accident. There was also evidence that the manufacturers of this truck were prepared to furnish additional equipment, consisting of stronger springs, booster brake and a governor to control speed, which were designed to increase its capacity to 12,500 pounds, gross weight, but that no equipment could make safe the operation of this truck with a gross weight of 19,000 pounds such as it was carrying at the time of the accident. There was evidence that a truck thus overloaded had an abnormal tendency to skid on curves when traveling at a speed of 40 to 45 miles per hour, which would clearly result in forcing the front

end of the vehicle either to the left or to the right, depending upon the direction of the front wheels at the beginning of the skid. Plaintiff, accordingly, argues that the jury was entitled "to return a verdict against Vogel, based . . . on Vogel's own fault in equipping and loading the truck and intrusting it to Hayes without proper instructions or warning." We are unable to say, as a matter of law, that the jury might not properly have taken this view of the evidence. The motions for nonsuits and directed verdicts were properly denied.

Numerous exceptions to the admission and exclusion of evidence appear in the record, many of which fail because they reflect the preoccupation of counsel with their own theories of how the accident occurred.

Counsel for the defendants excepted to the examination of the defendant Hayes with reference to his experience in driving a truck like the one in question, with a similar load. The answer of the witness was favorable to the defendants and, for this reason amongst others, they take nothing by this exception.

The evidence as to the habits of the decedent was properly admitted, and the requested instructions with reference thereto were properly denied. *Buxton* v. *Langan,* 90 N. H. 13.

During the examination of the witness Manning, the plaintiff inquired whether, since his testimony on the previous day, he had examined a plan which he made at the time of the accident and refreshed his recollection therefrom. The witness stated that he had, and proceeded to make some slight changes in his testimony. It is now argued "that the description by counsel of a change in testimony as being merely the refreshing of a witness' recollection should be stricken out on motion." The phraseology of counsel was innocuous and no question of law is presented by this exception.

The witness Lowe testified that, after the accident, there were, on the highway, two parallel marks which he described as brake marks, south of the point where the truck came to rest. The court denied the defendants' motion to strike out this testimony, and the defendants excepted. It is now argued that this motion should have been granted "because no connection between them and the happening of the accident was established." It is true, upon all the evidence, that the significance of these marks was somewhat problematical, but their existence at the scene of the accident was a part of the description of the locus and the marks themselves are ap-

parently indicated in a photograph introduced by the defendants as Exhibit K. There was no error in the ruling.

The plaintiff claimed that the position of the deceased in the automobile after the accident was significant as indicating the movements of the cars after the collision. He was accordingly permitted to ask the witness Sparks whether the deceased was still in the car when certain photographs were taken. It is now argued that this evidence was prejudicial since "there was no evidence of conscious suffering." The court instructed the jury that "There is no evidence of conscious suffering on the part of the plaintiff's intestate at or after the accident, and you are instructed to disregard all evidence of the condition of the plaintiff's intestate after the accident if you come to the question of damages." In view of this instruction the defendants' exception is overruled.

The defendants excepted to the testimony of the plaintiff's expert O'Brien, as to what equipment should have been installed on the truck and the danger involved in an overload at given rates of speed, also to his testimony that the load of the truck was "in excess of factory specifications." This testimony was all essential to the plaintiff's theory of liability and appears to have been properly admitted.

Another qualified expert witness was permitted to state the effect of the forces which would be generated by the truck in going around a curve carrying an overload like the one in question. It is now insisted that this evidence was improperly admitted because the place where the accident happened was not definitely established and further that the answer involved "sheer speculation." The question involved the application of certain laws of physics with which the witness was well acquainted, and it cannot be said that there was error in the admission of this testimony.

It is contended that further testimony of the same witness was erroneously admitted because it is based upon the assumption that "the Chevrolet and the truck were in the easterly lane at the time of the contact." This was one of the essential contentions of the plaintiff and there was no error in admitting questions based upon the assumption that it was true.

Another expert witness called by the plaintiff testified that he had heard "some of the facts" which Mr. O'Brien had been asked to assume on the previous day. Plaintiff's counsel then began another question as follows: "Q. I want you to assume also in addition to the fact that you heard me ask Mr. O'Brien to assume . . . Mr. HARTNETT: Just a moment."

It thus appears that the question in which the witness was asked to assume certain facts which Mr. O'Brien had been asked to assume was not completed. A careful examination of the record indicates that in subsequent examination of the witness he was not asked to assume any facts which had been stated to Mr. O'Brien on the previous day and the defendant therefore takes nothing by this exception.

Further testimony of the same witness as to the effect of certain speeds and weights upon the truck is said to be erroneous because of the "failure of the plaintiff to connect up this evidence." This apparently means that the evidence was inadmissible because the plaintiff failed to establish his theory of the cause of the accident to the satisfaction of the defendants. This exception is overruled.

The defendants produced as a witness an inspector of the Motor Vehicle Department who examined the scene of the accident shortly after it occurred, and was asked to express an opinion as to whether the accident happened in the east or the west lane. This question was excluded and the defendants excepted. During the examination of the plaintiff's witness O'Brien, a similar question had been excluded by the court upon the ground that "I don't think it would be helpful to the jury for him to answer," and in ruling upon the question here presented, the court said: "I am inclined to exclude this evidence as I did that of Mr. O'Brien." It thus appears that both rulings were discretionary and based upon the ground that the answers would not aid the jury. Such a ruling presents no question of law.

The defendants offered to prove that the defendant Vogel's claim for damages to the truck had been settled by the insurance company which insured the car that the deceased was driving. This offer was rejected and the defendant excepted. The ruling was correct. The action of the insurance company could not be construed as an admission of the plaintiff.

The court also excluded evidence that the plaintiff, as administrator, had received $3,990 as compensation from the employers of the deceased under the Workmen's Compensation Law. This ruling appears to have been correct. "The employer is not called upon to discharge the wrong-doer's liability but is only to make good some part of its consequences, . . . In the case of parties jointly liable, there is a joint liability. Here there is none, and the situation is not a parallel one." *Holland* v. *Company*, 83 N. H. 482, 487. The rights of the plaintiff under the Workmen's Compensation Act against his employers, and at common law against the defendants,

are so separate and distinct that payment and satisfaction of the former cannot have the effect of reducing the amount of the recovery against the latter. "If the legislature by failure to provide against it has given the beneficiaries of legislation some advantage of overlapping payments, there is no principle of law for avoiding it by transferring the advantage to the employer" (*Holland* v. *Company, supra*), or, it may be added, to a third party.

A witness for the plaintiff was asked where the left rear wheels of the truck would have been if certain marks in the road were made by the right rear wheels. It is now argued that the admission of this testimony was error because, upon the plaintiff's theory of the case, the location of the left wheels was "a matter of speculation." We are unable to discover any merit in this suggestion and the exception is overruled.

Defendants' exceptions to the argument of plaintiff's counsel are overruled. In four instances the language to which the defendant objected was withdrawn with appropriate remarks by the court clearly indicating his disapproval thereof. Plaintiff's argument that the truck "was sliding and out of control" was a fair inference from the tire marks on the road.

The defendants' exceptions to the denial of its requests for instructions require only brief notice. As appears above, the issues of speed and improper equipment were properly in the case and could not be withdrawn from the consideration of the jury. The issue of the alleged violation of the law of the road lay at the foundation of the plaintiff's case and was properly submitted to the jury. The question of contributory negligence was adequately submitted to the jury and the defendants' requests with reference thereto were properly denied.

The emergency doctrine was equally applicable to the deceased and to the defendant Hayes, and the defendants' request that it be confined in application to the defendant Hayes was properly denied.

The defendants requested the court to charge the jury that, in order to recover, "the plaintiff must establish that the defendant Hayes or the defendant Vogel was negligent or at fault and that such negligence or fault was the sole cause of the accident." The substance of this request was embodied in the charge and defendant's exception to its supposed denial is therefore overruled.

Defendants requested the court to charge the jury that "the defendant Hayes was under no obligation to take preventive action until a situation of damage was presented." This request was also clearly erroneous. Whether due care required that the defendant

Hayes apply his brakes and reduce his speed as a matter of precaution before entering upon the down grade upon which the accident occurred was obviously a question for the jury.

Defendants' 24th request purported to incorporate the plaintiff's theory of the accident and would have told the jury that, unless they found that the accident happened precisely in this manner, they should find for the defendants. The request was properly denied. It would have held the plaintiff to a meticulous proof of every claim which he made and denied him recovery if he failed at any point.

Defendants' requests numbers 25 and 26, would have withdrawn from the jury the issue of proper brakes and swerving of the truck before the accident. It is now argued that "the record is barren of any suggestion of a swerve on the part of the truck; it is, furthermore, devoid of any proof that brakes had anything to do with the accident." This contention cannot be adopted. The testimony of the witness Sparks, above referred to, is sufficient answer to the first half of this sentence, and the answer to the second half is to be found in the testimony of the witness O'Brien.

The defendants requested the court to charge the jury as follows: "33. If the plaintiff's intestate had fainted just prior to the accident, you must find for the defendant." The only basis for this request was the evidence that, upon two occasions long before the accident, the deceased had lost consciousness. There was no basis in the evidence for finding that he fainted upon the occasion in question. The request would have suggested to the jury that it might properly make a finding of fact without evidence to support it. The impropriety of such a request is self-evident.

The defendants requested the court to charge the jury that the plaintiff could not recover if they should "find that the accident happened as a result of the plaintiff's intestate crossing from his right-hand to his left-hand lane," and excepted to the denial of this request. The court properly charged the jury as to the effect of a violation of the law of the road (P. L., c. 90, s. 1), and, with particular reference to the conduct of the deceased, said: "If he violated the law of the road or was negligent, and such fault helped to cause the accident, the plaintiff cannot recover." This exception appears to be without merit.

In accordance with the foregoing conclusions, there must be

*Judgments on the verdicts.*

All concurred.